1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MINA ROHANI et al.,

              Plaintiffs,

    v.

MARCO RUBIO et al.,

              Defendants.[1]

CASE NO. 2:24-cv-00389-LK

ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendants' Second Motion to Dismiss. Dkt. No. 46. Plaintiffs seek review of the denial of applications for visas and entry into the United States. Defendants contend that Plaintiffs' claims are precluded by the doctrine of consular nonreviewability and other threshold legal grounds. *Id.* at 10. For the reasons set forth below, the Court grants the motion.[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Marco Rubio is automatically substituted in his official capacity as United States Secretary of State for former Secretary Antony Blinken. Pamela Bondi is also substituted in her official capacity as Attorney General for former Attorney General Merrick Garland, and Kristi Noem is substituted in her official capacity as Secretary of the Department of Homeland Security for former Secretary Alejandro Mayorkas.

[2] Because the Court can decide the matter based on the parties' submissions, it denies their requests for oral argument. Dkt. No. 46 at 1; Dkt. No. 48 at 1.

# I.    BACKGROUND

Plaintiffs are a group of noncitizens who were denied visas or entry into the United States and their relatives. Plaintiffs can be categorized into three groups: (1) individuals who sought entry to the United States from Canada (the "Canadian Applicants"), (2) individuals who sought a visa to enter the United States (the "Visa Applicants"), and (3) relatives of the Visa Applicants (the "Relatives"). Dkt. No. 22 at 6–7.

All of the Visa Applicants and the Canadian Applicants served in the Islamic Revolutionary Guard Corps ("IRGC") before it was designated a Tier I foreign terrorist organization in April 2019. *Id.* All of the Visa Applicants were denied a visa by consular officials based on a finding that they were inadmissible based on terrorism-related inadmissibility grounds ("TRIG") pursuant to 8 U.S.C. § 1182(a)(3)(B). *Id.* The Canadian Applicants are citizens of, and reside in, Canada. *Id.* at 7. All Canadian Applicants except one were denied entry into the United States by Customs and Border Patrol ("CBP") officers under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of an immigrant visa, after "questioning that was focused on Plaintiffs' previous IRGC civil service." *Id.* at 2. One Canadian Applicant was not provided a reason why the officer found him inadmissible after asking about the "details of [his] daily tasks during [his] time serving in the IRGC." Dkt. No. 40 at 3; Dkt. No. 22-5 at 38.

## A.    Visa Application and Entry Processes

Foreign nationals seeking a visa or entry to the United States carry the burden of establishing eligibility for such visa or entry and of establishing their admissibility to the United States. 8 U.S.C. § 1361.

### 1.  Visa Applicants

"To be admitted to the United States and reside here permanently, a noncitizen needs a statutorily provided basis, such as an immigrant visa." Dkt. No. 46 at 14 (citing 8 U.S.C.

§§ 1181(a), 1182(a)(7), 1184(a)). For family-based immigrant visas, a U.S. citizen or lawful permanent resident must file a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS") on behalf of the noncitizen, requesting to classify them either as an immediate relative or other family-preference category. *See* 8 U.S.C. § 1154(a)(1); 8 C.F.R. § 204.2. If approved, the petition is forwarded to the Department of State. 8 U.S.C. § 1154(b). Next, the noncitizen must appear before a consular officer for an interview, 8 U.S.C. §§ 1202(a), (e); 22 C.F.R. §§ 42.62(a), (b), and provide certain background records including "a certified copy of any existing . . . military record," and "a certified copy of all other records or documents concerning him or his case which may be required by the consular officer," 8 U.S.C. § 1202(b). At the conclusion of the visa interview, "the consular officer must issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a). Consular officers have been delegated the sole authority to issue visas. 8 U.S.C. §§ 1101(a)(9), (a)(16); 1104(a); 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81. "No visa . . . shall be issued" if it "appears to the consular officer" that the applicant is inadmissible to the United States or the consular officer "knows or has reason to believe" the applicant is inadmissible. 8 U.S.C. § 1201(g). Likewise, "no visa . . . shall be issued" if an applicant "fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa." *Id.* § 1361; *see also id.* § 1201(a)(1) (providing that a consular officer "may" issue a visa to a qualifying applicant).

    2.  <u>Applicants at a Port of Entry</u>

    A noncitizen arriving at a border port of entry is considered an applicant for admission. 8 U.S.C. § 1225(a)(1). Having a visa does not grant a right of entry. 8 U.S.C. § 1201(h). Immigration officers are responsible for determining whether an applicant for admission is admissible. 8 U.S.C. § 1225(a)(3).

    The INA contains provisions for what is known as "expedited removal," which permits an immigration officer to order the removal of certain noncitizens:

> If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i). The two grounds for inadmissibility referenced in this provision are for fraud or misrepresentation in seeking admission, 8 U.S.C. § 1182(a)(6)(C), and lack of a valid entry document, 8 U.S.C. § 1182(a).

Thus, if an immigration officer determines a noncitizen is inadmissible for either of the two reasons listed—fraud or misrepresentation or lack of a valid entry document—the officer orders the noncitizen removed unless the noncitizen expresses a fear of persecution or an intent to apply for asylum. However, an immigration officer also has discretion to permit a noncitizen to withdraw their application for admission at any time. A noncitizen applying for admission "may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). If a noncitizen withdraws their application for admission, it is "in lieu of removal proceedings . . . or expedited removal." 8 C.F.R. § 235.4.

3. Individuals Suspected of Terrorist Activities

Noncitizens who have engaged in terrorist activities or who have certain associations with terrorist organizations are ineligible for visas or admission to the United States. *See generally* 8 U.S.C. § 1182(a)(3)(B). A "terrorist organization" is defined as an organization:

> (I) designated under [8 U.S.C. § 1189];
>
> (II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or
>
> (III) that is a group of two or more individuals, whether organized or not, which

ORDER GRANTING MOTION TO DISMISS - 4

1   engages in, or has a subgroup which engages in, the activities described in
2   subclauses (I) through (VI) of clause (iv) [i.e., terrorism-related activities].

3   *Id.* § 1182(a)(3)(B)(vi). The first two categories are designated as Foreign Terrorist Organizations

4   ("FTO") and sometimes referred to as Tier I and Tier II terrorist organizations. Dkt. No. 46 at 16.

5   Organizations described in the third category are referred to as Tier III terrorist organizations. *Id.*

6   While Tier I and Tier II terrorist organizations are formally designated, "consular officers

7   determine on a case-by-case basis whether a group meets the definition of an undesignated or Tier

8   III terrorist organization." *Id.* (citing 8 U.S.C. § 1182(a)(3)(B)(vi)(III)); *see also Terrorism-*

9   *Related Inadmissibility Grounds (TRIG)*, available at https://www.uscis.gov/laws-and-

10  policy/other-resources/terrorism-related-inadmissibility-grounds-trig ("the determination of

11  whether a group can be considered a Tier III organization is made on a case-by-case basis, in

12  connection with the review of an application for an immigration benefit. Tier III organizations

13  arise and change over time" (last visited May 19, 2025)).

14      On April 15, 2019, the Secretary of State designated the IRGC—a branch of the Iranian

15  military—as an FTO under 8 U.S.C. § 1189, making it a Tier I foreign terrorist organization from

16  that point forward. Dkt. No. 46 at 17; *see also In re Designation of the IRGC (and other Aliases)*

17  *as a Foreign Terrorist Organization*, 84 Fed. Reg. 15278 (Apr. 15, 2019). As a result, individuals

18  who served in the IRGC after its designation as a Tier I FTO in April 2019 are generally

19  inadmissible to the United States under 8 U.S.C. § 1182(a)(3)(B). Dkt. No. 46 at 17. "For

20  individuals who served in the IRGC prior to April 2019, noncitizens are generally inadmissible if

21  a consular officer determines that the IRGC was a Tier III terrorist organization at the time of the

22  applicant's service." *Id.*

23      The Immigration and Nationality Act ("INA") typically requires immigration and consular

24  officers to list "the specific provision or provisions of law under which the alien is inadmissible[.]"

ORDER GRANTING MOTION TO DISMISS - 5

8 U.S.C. § 1182(b)(1). However, when they deem an individual inadmissible under TRIG, that obligation "does not apply[.]" *Id.* § 1182(b)(3).

**B.    Plaintiffs File Suit**

Plaintiffs filed this action on March 21, 2024, Dkt. No. 1, and after Defendants filed a motion to dismiss for failure to state claim, Plaintiffs filed an amended complaint, Dkt. No. 22. Plaintiffs have named as Defendants the Secretaries of State and the Department of Homeland Security, the Attorney General, the Assistant Secretary of the Bureau of Diplomatic Security, and the Senior Official Performing the Duties of the Commissioner for CBP, all in their official capacities. *Id.* at 7–8.

The Visa Applicants include eight individuals who reside in Iran, Germany, or Canada. *Id.* at 6–7, 26. The Relatives are family members of the Visa Applicants and include five U.S. citizens (Mina Rohani, Fatemeh Keneshlou, Zahra Hadizadeh Kheirkhan, Fereshteh Farhi, and Ida Naziri), two lawful permanent residents (Masomeh Torabi and Gohar Eslami), and three individuals who are neither U.S. citizens nor lawful permanent residents (Naghmeh Eshghi, Maryam Shamloo, and Parsa Jahanlou). *Id.* All of the Relatives live in the United States. *Id.* at 6.

In addition, there are seven Canadian Applicant Plaintiffs. *Id.* at 7. Plaintiff Sobhi is the only Canadian Applicant who has an accompanying Relative Plaintiff, and the only one who is both a Visa Applicant and a Canadian Applicant. *Id.* at 7, 26–27. In addition, he was the only Canadian Applicant who did not withdraw his application for admission and was removed in expedited removal proceedings. Dkt. No. 46 at 12 n.2; *see also* Dkt. No. 22-5 at 15.

The amended complaint generally alleges that Defendants have implemented "an unlawful policy of blanket denials of visas or entry to the United States to IRGC conscripts, regardless of when they served, and without eliciting the details of their service or any evidence of their knowledge or intent." Dkt. No. 22 at 11. Based on that overarching theory, the amended complaint

includes four counts. First, Plaintiffs allege that Defendants have violated the *Accardi* doctrine, which requires agencies to follow their own procedures. *Id.* at 35–36; s*ee also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Specifically, they contend that under 22 C.F.R. § 42.81(a), a visa denial "must be in conformance with the provisions of 22 C.F.R. § 40.6," which provides that a visa can only "be refused upon a ground specifically set out in the law or implementing regulations." Dkt No. 22 at 36. This "require[s] a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations." 22 C.F.R. § 40.6. Plaintiffs contend that Defendants violated these regulations and the INA itself by relying on a blanket policy rather than "requiring case-by-case consideration" and providing applicants "the opportunity to sustain an evidentiary burden[.]" Dkt No. 22 at 36. Plaintiffs also allege that under 8 C.F.R. § 235.4, when CBP officers use their discretion to allow an applicant to withdraw their application for admission, "[t]he alien's decision to withdraw his or her application for admission must be made voluntarily," but the Canadian Applicants did not voluntarily withdraw their applications for admission, *id.* at 37–38. Instead, they claim that they were coerced into withdrawing their applications. *Id.*

Second, Plaintiffs allege violations of their First and Fifth Amendment rights. *Id.* at 38. They contend that "Plaintiff Dr. Eshghi's First Amendment right to practice her Christian faith is implicated by the denial of her husband's visa, and Plaintiff Dr. Ahmad's First Amendment right to freedom of speech is implicated by the denial of his entry to the United States to teach and present at conferences[.]" *Id.* at 38. They argue that these allegations are sufficient to avoid dismissal under the doctrine of consular nonreviewability and require Defendants to provide facially legitimate and bona fide reasons for the denials. *Id.* Plaintiffs further argue that Defendants acted in bad faith by violating statutory requirements. *Id.* at 39. Finally, they argue that Defendants

violated their substantive and procedural due process rights by instituting a blanket policy instead of case-by-case review. *Id.*

Third, Plaintiffs bring a claim under the Administrative Procedure Act ("APA"), alleging that "Defendants' policy of issuing blanket denials to all IRGC conscripts violates the APA" because it is arbitrary and capricious, otherwise not in accordance with the law, or conducted without observance of procedure required by law. *Id.* at 40. Plaintiffs further allege that "Defendants' policy is to violate the inadmissibility statute, which requires consular officers to give Plaintiffs' a genuine opportunity to present clear and convincing evidence they lacked knowledge or intent that the Tier III organization to which they belonged or supported was a terrorist organization." *Id.* at 41. They also contend that Defendants denied Plaintiffs "their statutorily-guaranteed opportunity to present evidence and *cannot* have done so as to multiple named plaintiffs" who were interviewed before the IRGC was designated as a Tier I terrorist organization. *Id.* at 41–42. As for the Canadian Applicants, Plaintiffs allege that "Defendants are circumventing the review processes established by Congress . . . for applicants believed to be inadmissible under security-related grounds by denying them instead for lack of valid documentation," which constitutes "federal agency action conducted 'without observance of procedure required by law[.]'" *Id.* at 42 (quoting 5 U.S.C. § 706(2)(D)).

Fourth, Plaintiffs seek a writ of mandamus, contending that "Defendants have a clear, non-discretionary, purely ministerial duty to adjudicate visa applications in accordance with binding law and in good faith" but they "have failed to do so with respect to IRGC conscripts[.]" *Id.* They seek "a writ of mandamus under 28 U.S.C. § 1361 ordering Defendants to follow the statutory requirements for determining the admissibility of IRGC conscripts and adjudicate such applicants' visa applications in good faith because there are no other adequate remedies available to Plaintiffs." *Id.* at 42–43.

## II.   DISCUSSION

Defendants argue that the Visa Applicants and Relatives' non-constitutional claims and Plaintiffs' constitutional claims related to visa applications must be dismissed under the doctrine of consular nonreviewability. Dkt. No. 46 at 18, 25. They also contend that dismissal of the constitutional claims of all the non-resident, non-citizen Plaintiffs is warranted because "[n]onresident noncitizens have no constitutionally protected interests because they have no right of entry." *Id.* at 24. In the same vein, Defendants assert that the non-spouse Relatives have "no recognized constitutionally protected due process interest in their family members' visa denials." *Id.* As for the Canadian Applicants, Defendants argue that Plaintiffs lack standing because the injuries they allege are not redressable by any named Defendant, and that Canadian Applicants have failed to state a claim "because their factual allegations do not violate any law and because the supporting documents they submit contradict their allegations." *Id.* at 11, 31, 33–34. And finally, Defendants aver that Section 1252(a)(2)(A) strips the Court of jurisdiction to review Plaintiff Sobhi's removal under 8 U.S.C. § 1225(b)(1). *Id.* at 30. Plaintiffs oppose the motion to dismiss. Dkt. No. 48.[3]

### A.   Venue

Defendants argue that the Court should dismiss this case for improper venue because "Defendants are governmental agencies in the District of Columbia," consular officers are located abroad, and "CBP officers at various ports of entry in the United States denied entry to the Canadian Applicants." Dkt. No. 46 at 35. Defendants further argue that venue is improper because "there is no Plaintiff involved in this matter who has stated a claim for relief." *Id.* at 36. Plaintiffs

---

[3] Roughly three weeks after Defendants filed their reply brief, Plaintiffs filed a notice of supplemental authority to draw the Court's attention to a 2004 case. Dkt. No. 57. In so doing, Plaintiffs violated Local Civil Rule 7(n), which permits such notices in the event that "relevant authority" is "issued *after* the date the party's last brief was filed[.]" (Emphasis added.) The Court STRIKES the notice as an improper surreply, LCR 7(g), and cautions Plaintiffs that future violations of the Local Civil Rules may result in sanctions.

respond that Defendants have confused venue with the merits, "Plaintiffs Mina Rohani and Masoumeh Torabi reside in this judicial district," and "a substantial part of the events or omissions giving rise to the claims occurred at the U.S. ports of entry in Blaine, Washington, where Plaintiffs Amir Abbas Davafara, Michael Wise, and Mohammadjafar Safaie were refused entry into the United States[.]" Dkt. No. 48 at 25.

A defendant may move to dismiss a suit for improper venue under Federal Rule of Civil Procedure 12(b)(3). When venue is challenged, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). "Courts may consider facts outside the pleadings and need not accept the pleadings as true, but all reasonable inferences and factual conflicts must be resolved in the nonmoving party's favor." *Kantharia v. USCIS*, 672 F. Supp. 3d 1030, 1032 (C.D. Cal. 2023). Where, as here, plaintiffs sue a U.S. agency or officers or employees of the United States acting in their official capacities, the action may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. 1391(e). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).

The Court finds that venue is proper because two of the Plaintiffs reside in this district. Dkt. No. 22 at 6, 8–9; 28 U.S.C. § 1391(e); *cf. Zhang v. DeHart*, No. C24-0064-KKE, 2024 WL 3027739, at *2 (W.D. Wash. June 17, 2024) (finding venue improper where the only plaintiff was a Canadian resident and his U.S. resident wife was not a plaintiff). Although there are numerous Plaintiffs, "the clear weight of federal authority holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District." *Californians for Renewable Energy v. EPA*, No. 15-3292-

SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018) (reviewing cases). In addition, a substantial part of the events or omissions giving rise to the claims occurred at the U.S. port of entry in Blaine, Washington, where Plaintiffs Amir Abbas Davafara, Michael Wise, and Mohammadjafar Safaie were refused entry into the United States. Dkt. No. 22 at 8. The Court therefore denies Defendants' request to dismiss for improper venue.

**B.    Legal Standard**

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the Court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A challenge to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," whereas "in a factual attack, the challenger

1    disputes the truth of the allegations that, by themselves, would otherwise invoke federal

2    jurisdiction." *Id.* District courts resolve facial attacks as they do motions to dismiss under Rule

3    12(b)(6): "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in

4    the plaintiff's favor," and then determining whether they are legally sufficient to invoke

5    jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). With a factual attack, on the

6    other hand, "[t]he plaintiff bears the burden of proving by a preponderance of the evidence that

7    each of the requirements for subject-matter jurisdiction has been met." *Id.* In evaluating a factual

8    attack, courts may look to evidence beyond the complaint without converting the motion to dismiss

9    into one for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039.

10   **C.    The Visa Applicants' Non-Constitutional Claims**

11          Defendants argue that the doctrine of consular nonreviewability compels dismissal of the

12   Visa Applicants and Relatives' non-constitutional claims (counts one, three, and four). Dkt. No.

13   46 at 18. They contend that the doctrine precludes the Court from reviewing decisions to deny

14   visas to noncitizens abroad, and consequently they request that the Court dismiss Plaintiffs' claims

15   under the *Accardi* doctrine, the APA, and the mandamus statute for failure to state a claim. *Id.* at

16   19. Plaintiffs respond that although "Congress may delegate to executive officials the discretionary

17   authority to admit noncitizens immune from judicial inquiry or interference," it has not done so

18   here. Dkt. No. 48 at 7 (quoting *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024)). Instead, they

19   argue, neither the doctrine of consular nonreviewability nor its plenary power corollary apply

20   where, as here, an executive branch policy violates a valid act of Congress. *Id.*

21          Assertions of consular nonreviewability are reviewed under Federal Rule of Civil

22   Procedure 12(b)(6) as a failure to state a claim for which relief can be granted rather than under

23   Rule 12(b)(1) for lack of subject matter jurisdiction. *Muñoz*, 602 U.S. at 908 n.4 ("[T]he doctrine

24   of consular nonreviewability is not jurisdictional."). Under the doctrine of consular

nonreviewability, courts "have long recognized that ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (quotation marks omitted); *see also Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (explaining that consular nonreviewability is the general rule that decisions "to issue or withhold a visa" are not reviewable in court "unless Congress says otherwise"). The doctrine "is based on the recognition that the power to exclude or expel aliens, as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government." *Allen*, 896 F.3d at 1104 (cleaned up).

Section 1201(g) of Title 8 provides that no visa shall be issued if "the consular officer knows or has reason to believe that [the applicant] is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." Congress has also delegated to executive officials the ability to exclude noncitizens on terrorism related grounds. *See* 8 U.S.C. § 1182(a)(3)(B). Accordingly, "[t]he APA provides no avenue for review of a consular officer's adjudication of a visa on the merits," even when the plaintiff claims legal error. *Allen*, 896 F.3d at 1107–08 (explaining that to hold otherwise would "convert[] consular nonreviewability into consular reviewability").

The Supreme Court recently reaffirmed that the INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Muñoz*, 602 U.S. at 908; *see also id.* (explaining that the judicial branch has no role to play "unless expressly authorized by law," and the INA does not provide such a source of law (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). Consequently, courts can review the denial of a visa application only (1) when the consular official "has failed to act at all," or (2) when "a U.S. citizen's constitutional rights are alleged to have been violated by

1   the denial of a visa to a foreigner without a facially legitimate and bona fide reason for the denial."

2   *Allen*, 896 F.3d at 1100 (cleaned up). Plaintiffs do not allege that Defendants have failed to act at

3   all, and their constitutional claims are addressed below.

4       Despite the limitations on courts' review of visa denials, Plaintiffs argue that this Court

5   can adjudicate their non-constitutional claims because Defendants are ignoring the intent and

6   knowledge requirements in the INA and excluding former members of the IRGC under a blanket

7   policy of inadmissibility. Dkt. No. 48 at 8. To support that claim, Plaintiffs argue that all of the

8   subsections of Section 1182(a)(3)(B) include a requirement that the applicant had knowledge or

9   intent of terrorism related activities to support a Tier III-related denial. *Id.* at 9. They note that

10  membership in a Tier I or II organization alone can render an individual inadmissible, "regardless

11  of what they knew about that organization or their activity." *Id.* at 9–10. In contrast, individuals

12  who belonged to a Tier III organization are admissible if they can "demonstrate by clear and

13  convincing evidence that [they] did not know, and should not reasonably have known, that the

14  organization was a terrorist organization." *Id.* at 10 (quoting Section 1182(a)(3)(B)(i)(VI)).

15      While it is true that some subsections require intent for activities related to a Tier III

16  organization, some do not. For example, as Defendants note, Section 1182(a)(3)(B)(i)(VIII)

17  includes no knowledge or intent requirement relating to those who have received military-type

18  training from a terrorist organization. Dkt. No. 56 at 6.[4] Moreover, Defendants were not required

19  to notify Plaintiffs of the subsection of Section 1182(a)(3)(B) upon which their application was

20  denied. 8 U.S.C. § 1182(b)(3); *see also Muñoz*, 602 U.S. at 904. Plaintiffs cannot circumvent that

21  reality by assuming they were denied under a section that requires knowledge or intent. Moreover,

22

23  ---
    [4] Again, although the IRGC was not formally designated as a Tier I FTO until April 2019, consular officers may nevertheless determine that the IRGC acted as a Tier III terrorist organization prior to April 2019. *Bahiraei v. Blinken*, 717 F. Supp. 3d 726, 736 (N.D. Ill. 2024); *Yeganeh v. Mayorkas*, No. 21-CV-02426-EMC, 2021 WL 5113221, at *4
24  (N.D. Cal. Nov. 3, 2021).

even if Defendants erred by failing to apply a knowledge/intent requirement, the doctrine of consular nonreviewability precludes the Court from reviewing such legal errors in the context of a denied visa application. *Allen*, 896 F.3d at 1107–09.

Plaintiffs also contend that a series of cases help them avoid the doctrine of consular nonreviewability, but the plaintiffs in those cases were not collaterally attacking inadmissibility decisions as Plaintiffs are here. Dkt. No. 48 at 17–19. To come within the ambit of their cited cases, Plaintiffs contend that they are not challenging individual visa decisions, but instead are challenging the process they claim Defendants used, i.e., issuing blanket denials without conducting a case-by-case review. *Id.* at 15. They argue that "[t]he Ninth Circuit has repeatedly applied the doctrine only to an individual 'consular official's decision to issue or withhold a visa'" and "not to statutory challenges against a general policy." *Id.* (quoting *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008) and citing *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997)).[5] They also contend that as a consequence of the blanket policy, Defendants deprived them of an "opportunity to present evidence to sustain their statutory and regulatory burden of proving visa eligibility." Dkt. No. 22 at 4. However, numerous courts have rejected such process challenges, and this Court joins them. *See, e.g.*, *Pak v. Biden*, 91 F.4th 896, 900–01 (7th Cir. 2024) (holding that "Plaintiffs cannot shield their claims from the doctrine of consular nonreviewability by repackaging their substantive complaints as procedural objections" to defendants' "systemic practice of depriving visa applicants of the opportunity to establish eligibility for TRIG exemptions" (cleaned up)); *Capistrano v. Dep't of State*, 267 F. App'x 593, 594–95 (9th Cir. 2008) (applying the doctrine of consular nonreviewability and affirming dismissal of a claim that a consulate "failed to follow proper protocol in determining that the applicants were inadmiss[i]ble";

---

[5] *Patel* involved the State Department's "failure to issue any decision on a visa application at all" rather than a visa denial. *Allen*, 896 F.3d at 1108.

explaining that the fact that appellants "characterize their complaint as one challenging the process followed by the consulate rather than its ultimate decision does not exempt the case from this well-settled doctrine"); *Keyhanpoor v. Blinken*, 633 F. Supp. 3d 88, 95 (D.D.C. 2022) ("Plaintiffs' APA claim asks the Court to look behind the consular officers' refusals of the IRGC Plaintiffs' visa applications to the merits and policies informing those outcomes. But under the consular nonreviewability doctrine, it cannot."); *Tahmooresi v. Blinken*, 629 F. Supp. 3d 6, 10 (D. Mass. 2022) (holding that the consular nonreviewability doctrine barred its review of the State Department's "broader policy of applying TRIG to categorically exclude persons in [plaintiff's] position [i.e., men who had completed mandatory military service with the IRGC] from the United States").

Plaintiffs also rely on *Emami v. Nielsen*, Dkt. No. 48 at 17, but the *Emami* plaintiffs did not challenge "individualized determinations for any specific person," 365 F. Supp. 3d 1009, 1018–19 (N.D. Cal. 2019). Here, although Plaintiffs contend that they are challenging Defendants' process as in *Emami*, Dkt. No. 48 at 17, they expressly state that they are seeking review of their visa decisions, Dkt. No. 22 at 43–44 (seeking an order requiring Defendants to reconsider Plaintiffs' visa applications). The Court cannot assess whether Defendants caused Plaintiffs' alleged injuries (by applying the alleged blanket policy to the Visa Applicants) without first assessing why those visa decisions were made. *Pak*, 91 F.4th at 901. Similarly, the Visa Applicants' injuries are not redressable unless the Court were to require Defendants to revisit their decisions denying the visa applications. Dkt. No. 22 at 43. These realities highlight that while Plaintiffs may say they are challenging Defendants' process, they are also challenging their visa denials, bringing their claims within the scope of the consular nonreviewability doctrine. *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) ("Courts are not required to take a plaintiff's word that she is not challenging the visa denial"); *Capistrano*, 267 F. App'x at 595 ("At

its core, the relief sought by the Appellants would require the Manila consulate to revisit its decision denying the visa applications. Issuing such relief would be exactly what the doctrine of consular nonreviewability prevents [courts] from doing."); *Ventura-Escamilla v. Immigr. and Naturalization Serv.*, 647 F.2d 28, 30 (9th Cir. 1981) (holding that the doctrine precludes review when "the relief sought is a review of the Consul's decision denying their application for a visa"). Because "Plaintiffs' claims cannot be divorced from a substantive challenge to the Executive's discretionary decisions" regarding the issuance of visas, the Court "must presume that their claims are unreviewable." *Pak*, 91 F.4th at 901. The Court therefore dismisses the Visa Applicants and Relatives' claims under the APA, the *Accardi* doctrine,[6] and for mandamus under the doctrine of consular nonreviewability.

### D.    All Plaintiffs' Constitutional Claims

Plaintiffs assert three constitutional claims. They contend that (1) "Plaintiff Dr. Eshghi's First Amendment right to practice her Christian faith is implicated by the denial of her husband's visa," (2) "Dr. Ahmad's First Amendment right to freedom of speech is implicated by the denial of his entry to the United States to teach and present at conferences," and (3) Defendants have violated Plaintiffs' substantive and procedural due process rights by "fail[ing] to implement the statute's dictates and have instead instituted a policy of blanket visa denials for all IRGC conscripts." Dkt. No. 22 at 38–40.[7] Defendants argue that these claims should be dismissed for three reasons. First, the constitutional claims of all the non-resident non-citizen Plaintiffs fail,

---

[6] The Court notes that "[t]he *Accardi* doctrine is not an independent cause of action[.]" *Ajaj v. United States*, No. 14-CV-01245-SMY, 2015 WL 14097638, at *2 (S.D. Ill. Dec. 29, 2015). Courts applying the doctrine "considered entities' adherence to their rules in the context of other, independent causes of action; none of them recognized the *Accardi* doctrine or any similar principle as providing a freestanding basis for suing government entities." *Am. C.L. Union Found. v. Washington Metro. Area Transit Auth.*, No. CV 17-1598 (TSC), 2023 WL 4846714, at *3 (D.D.C. July 28, 2023).

[7] Plaintiffs' allegations suggest that only Visa Applicants and their Relatives advance this claim; however, the result would not change if the Canadian Applicants were included.

1    including those of Dr. Ahmad, because "[n]onresident noncitizens have no constitutionally

2    protected interests because they have no right of entry." Dkt. No. 46 at 24. Second, the doctrine of

3    consular nonreviewability requires dismissal of Plaintiffs' constitutional claims related to visa

4    applications. *Id.* at 10, 24–25. Third, after *Muñoz*, "no constitutional right of a U.S. citizen is

5    implicated by the denial of another's visa application" so the Relatives "cannot identify a

6    fundamental liberty interest protected by the Constitution at issue in this lawsuit." *Id.* at 24.

7         Plaintiffs seem to concede that *Muñoz* bars their due process claims, Dkt. No. 48 at 21, and

8    that concession is warranted. Noncitizens have no "constitutional right of entry to this country as

9    a nonimmigrant or otherwise." *Muñoz*, 602 U.S. at 908 (citation omitted). Nor do the Relative

10   spouses have a liberty interest or other due process right to have their spouses admitted into the

11   country. *Id.* at 909 (holding that "a citizen does not have a fundamental liberty interest in her

12   noncitizen spouse being admitted to the country"). The Court finds that *Muñoz*'s reasoning extends

13   to other family members as well: as other courts have observed, "if American citizens do not have

14   a fundamental liberty interest in their spouses being admitted to the United States, it follows from

15   'this Nation's history and tradition' that citizens also lack a fundamental liberty interest in their

16   parents or siblings being admitted to the United Sates." *Chen v. Blinken*, No. 23-CV-2279 (NGG),

17   2025 WL 606221, at *7 (E.D.N.Y. Feb. 25, 2025) (quoting *Washington v. Glucksberg*, 521 U.S.

18   702, 721 (1997)); *see also id.* (finding that one plaintiff did not have "a fundamental liberty interest

19   in living in the United States with her sister" and another plaintiff did not have "a fundamental

20   liberty interest in living in the United States with his mother"); *Esghai v. United States Dep't of

21   State*, No. 24 CIV. 2993 (PAE), 2024 WL 4753799, at *8 (S.D.N.Y. Nov. 12, 2024) (holding that

22   plaintiff's asserted liberty interest in his noncitizen mother's visa application was not "deeply

23   rooted in this Nation's history and tradition"); *Morassaei v. United States Dep't of State*, No.

24   SACV 24-823 PA (DFMX), 2024 WL 5047480, at *4 (C.D. Cal. Sept. 25, 2024) ("If, as the

Supreme Court declared in *Muñoz*, . . . a spouse has no fundamental right protected by the Due Process Clause to bring a noncitizen spouse to the United States, there is no basis to conclude that [plaintiff] has a fundamental right to bring her father to the United States."); *Nasir v. United States Dep't of State*, 749 F. Supp. 3d 938, 944 (N.D. Ill. 2024) ("Plaintiff's due process claim must fail, as she has no due process right to the prompt adjudication of her father's visa."); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 227–28 (E.D.N.Y. 2021) ("Plaintiffs point to no case law at all, let alone case law binding on this court, that recognizes a fundamental constitutional right to cohabitate with one's family members within the United States."); *cf. Durrani v. Bitter*, No. CV 24-11313-FDS, 2024 WL 4228927, at *7 (D. Mass. Sept. 18, 2024) ("[P]laintiff has neither a liberty interest in reuniting with his mother nor a liberty interest in receiving an adjudication of his mother's visa application.").

Plaintiffs argue that even if their Fifth Amendment claims are foreclosed by *Muñoz*, their First Amendment claims remain viable. Dkt. No. 48 at 19–20. With respect to their claim that "Dr. Ahmad's First Amendment right to freedom of speech is implicated by the denial of his entry to the United States to teach and present at conferences," Dkt. No. 22 at 38, Plaintiffs point to *Kleindienst v. Mandel*, in which the Supreme Court recognized that U.S. citizens had a "right to hear" from a Belgian professor who sought a visa to speak in the Unites States. Dkt. No. 48 at 19 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)). With respect to Dr. Eshghi's First Amendment religious freedom claim, Plaintiffs fail to respond to Defendants altogether; their only mention of religion in their opposition is their conclusory statement that "Plaintiffs here may not be public figures like Prof. Mandel or his American colleagues, but the First Amendment protects their speech and right to practice their religion all the same." Dkt. No. 48 at 21.

There is "a narrow exception" to the doctrine of consular nonreviewability "when the denial of a visa allegedly burdens the constitutional rights of a U. S. citizen." *Muñoz*, 602 U.S. at

908 (quoting *Trump v. Hawaii*, 585 U.S. 667, 703 (2018)). In such cases, because of the "plenary congressional power to make policies and rules for exclusion of [non-citizens]" and because "Congress has delegated conditional exercise of this power to the Executive," courts review the Executive's exercise of this delegated discretion only to ensure that the decision-maker proffers "a facially legitimate and bona fide reason." *Mandel*, 408 U.S. at 769–70. However, "the courts will [not] look behind the exercise of that discretion," even when the constitutional rights of American citizens are indirectly implicated. *Id*. And importantly, in the First Amendment freedom of speech context, "the Court has identified a cognizable injury only where the listener has a concrete, specific connection to the speaker." *Murthy v. Missouri*, 603 U.S. 43, 46 (2024) (citing *Mandel*, 408 U.S. at 762).

Plaintiffs have not identified any U.S. citizen whose First Amendment rights were abridged. Their amended complaint alleges that the visa denials affected Dr. Ahmad's right to teach and present at conferences and Dr. Eshghi's right to practice her Christian faith by being with her husband, but they do not contend that either one is a U.S. citizen, Dkt. No. 22 at 6–7, 38. Nor does the complaint identify any U.S. citizen—let alone one with a concrete, specific connection to Dr. Ahmad—who claims to have a "right to hear" Dr. Ahmad speak. Plaintiffs' First Amendment speech claim thus does not come within the exception in *Mandel*. *See, e.g.*, *Khachatryan*, 4 F.4th at 850 ("[W]here, as here, the denial of a visa to an unadmitted and nonresident alien is at issue, the exception to consular reviewability involving constitutional claims only applies when the denial of a visa allegedly burdens the constitutional rights of a U.S. *citizen*." (quotation marks omitted)).

Dr. Eshghi's First Amendment religion claim fails as well. Again, Dr. Eshghi is not a U.S. citizen, and Plaintiffs fail to identify a U.S. citizen whose free exercise rights are burdened by the

denial of her husband's visa.[8]

Even if Plaintiffs' constitutional rights were implicated and they could pursue their claims despite the limitations of *Muñoz* and *Mandel*, the consular officers provided a "facially legitimate and bona fide" reason for rejecting the visa applications by citing to Section 1182(a)(3)(B) in Plaintiffs' visa refusal notices. Dkt. No. 22 at 16–27. Plaintiffs argue that the citation is not facially legitimate and bona fide because Defendants denied the visas without considering "the statute's intent/knowledge requirement." Dkt. No. 48 at 21–22. However, the Supreme Court has not required more than what Defendants have provided here. *Mandel*, 408 U.S. at 770; *see also Kerry v. Din*, 576 U.S. 86, 104–06 (2015) (Kennedy, J., concurring) (concluding that a consular official's citation to Section 1182(a)(3)(B) "indicates it relied upon a bona fide factual basis for denying a visa" and "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements");[9] *see also Bahiraei*, 717 F. Supp. 3d at 742 ("[O]n the face of each of the visa refusal decisions, the consular officers cited a proper ground under the statute—TRIG—and the undisputed record includes facts that would support that ground—military service in the IRGC, which consular officers could have concluded in their discretion was a Tier III terrorist organization at the time of service." (cleaned up)); *Keyhanpoor*, 633 F. Supp. 3d at 95 (rejecting plaintiffs' argument that exclusion based on service in the IRGC is not facially legitimate or bona fide because "[b]y invoking TRIG, Defendants provided a facially legitimate justification for denying the IRGC Plaintiffs' visas").[10]

---

[8] In light of Plaintiffs' failure to meaningfully defend this claim, the Court concludes that it would be futile to allow them to amend this portion of their complaint. *Yeganeh*, 2021 WL 5113221, at *10.

[9] *See also Cardenas v. United States*, 826 F.3d 1164, 1171 (9th Cir. 2016) (noting that Justice Kennedy's concurrence in *Din* is the controlling opinion).

[10] Plaintiffs' allegation that Defendants acted in bad faith, Dkt. No. 22 at 39, is directed to the last component of the three-part test set out in *Din*. Specifically, in determining whether a United States citizen's due process rights were violated by the denial of a visa application, the court considers (1) "whether the consular officer denied the visa under

1    For these reasons, the Court dismisses Plaintiffs' constitutional claims.

2  **E.    The Canadian Applicants' Non-Constitutional Claims**

3    1.  Improper Defendants and Standing

4    Defendants contend that the Canadian Applicants' APA and "*Accardi* doctrine" claims fail

5  because (1) the Canadian Applicants' contention that CBP officers deprived them of an

6  opportunity to present rebuttal evidence is not "fairly traceable to conduct of Attorney General

7  Merrick Garland or Secretary Mayorkas"; and (2) Plaintiffs do not allege that either official

8  personally participated in any relevant act. Dkt. No. 46 at 34. Plaintiffs respond that they are not

9  challenging individual determinations but instead challenge "broad agency policies." Dkt. No. 48

10 at 30. They argue that policy is set by agency heads, not by individual consular or CBP officers.

11 *Id.* But the complaint never identifies what agency head developed the policy (or has the authority

12 to change it); instead, it broadly references "Defendants' unlawful blanket policy" without tracing

13 the policy to any particular agency. *See, e.g.*, Dkt. No. 22 at 4–5, 11, 16, 33, 37, 39–41. This failure

14 warrants dismissal. 5 U.S.C. § 551(13) (agency action includes "the whole or part of an agency

15 rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.").

16

17

18 a valid statute of inadmissibility"; (2) "whether, in denying the visa, the consular officer cited an admissibility statute
   that specifies discrete factual predicates the consular officer must find to exist before denying a visa or whether,
19 alternatively, there is a fact in the record that provides at least a facial connection to the statutory ground of
   inadmissibility"; and (3) "whether the plaintiff has carried his or her burden of proving that the stated reason was not
20 bona fide by making an affirmative showing of bad faith on the part of the consular officer who denied the visa."
   *Khachatryan*, 4 F.4th at 851 (cleaned up).

21 Defendants argue that absent a showing that Plaintiffs' constitutional rights were violated, Plaintiffs cannot establish
   bad faith. Dkt. No. 46 at 27; *see also* Dkt. No. 56 at 11. In response, Plaintiffs do not specifically address bad faith,
22 but argue that Defendants have not demonstrated a facially legitimate and bona fide reason for the denials. Dkt. No.
   48 at 21. Again, this challenge fails where, as here, "the consular officer has cited a valid statute of inadmissibility
23 which implies a bona fide factual basis behind the denial." *Cardenas*, 826 F.3d at 1171; *see also Pak*, 91 F.4th at 902
   (the fact that a visa applicant completed military service in the IRGC supplies "at least a facial connection to terrorist
24 activity," which "forecloses any contention that the consular officers were imagining things"; that "consular officers
   never prompted [plaintiffs] to offer evidence (other than their military identification cards) about their service for the
   IRGC" is insufficient to establish bad faith (cleaned up)).

Defendants also argue that the Court must dismiss the Canadian Applicants' non-constitutional claims because "unadmitted nonresident noncitizens have no right of entry into the United States, and no cause of action to press in furtherance of their claim for admission." Dkt. No. 46 at 29. They further argue that "[t]he mere fact that an applicant for admission is a Canadian citizen does not preclude them from being found inadmissible"; thus, the Canadian Applicants' claims "fail at the very threshold." *Id.* True enough, the Canadian Applicants do not have a right of entry into the United States, they can be found inadmissible, and the Court cannot order Defendants to admit them into the United States. *See, e.g.*, *Gill v. Mayorkas*, No. C20-939-MJP, 2022 WL 425343, at *2 (W.D. Wash. Feb. 11, 2022) (explaining that "the Court cannot order Defendants to admit Plaintiff to the United States because he has no such right and whether he is admissible is a decision that must be made on the facts available when he presents himself at the border"). But this does not preclude them from having a cognizable claim. *See, e.g.*, *Matushkina*, 877 F.3d at 293 (holding that although plaintiff had no right to be admitted to the United States, she had a legally cognizable "interest in her admissibility to the United States, and the injury to that interest [wa]s apparent on the face of the complaint"); *see also Ranjan v. U.S. Dep't of Homeland Sec.*, No. 23-2453 (LLA), 2024 WL 3835355, at *4 (D.D.C. Aug. 15, 2024) (rejecting contention that "a noncitizen, non-resident plaintiff lacks standing simply because she has no substantive right to enter the United States"). As explained above and below, however, other deficiencies warrant dismissal of the Canadian Applicants' claims.[11]

---

[11] The Canadian Applicants do not seek a writ of mandamus. Plaintiffs' mandamus claim is alleged only on behalf of the Visa Applicants (and possibly on behalf of the Relatives). Dkt. No. 22 at 42–43 (alleging that Defendants violated their "clear, non-discretionary, purely ministerial duty to adjudicate visa applications in accordance with binding law and in good faith" with respect to IRGC conscripts, and seeking a writ of mandamus requiring Defendants to "adjudicate such applicants' visa applications in good faith").

1

2.  Plaintiff Sobhi

2

Defendants note that although Plaintiffs argue that the Canadian Applicants were

3

improperly determined to be inadmissible pursuant to Section 1182(a)(7)(A)(i)(I),[12] the only

4

Canadian Applicant who was formally found to be inadmissible under that section was Plaintiff

5

Sobhi. Dkt. No. 22 at 26; Dkt. No. 22–5 at 5–6, 15. Defendants aver that Section 1252(a)(2)(A)

6

strips the Court of jurisdiction to review Plaintiff Sobhi's removal under 8 U.S.C. § 1225(b)(1).

7

Dkt. No. 46 at 30. Plaintiffs respond that Sobhi "does not ask this Court for review of an expedited

8

removal order" and he "is a named plaintiff like any other named plaintiff and serves as a

9

representative of individuals denied admission due to former civil service in the IRGC." Dkt. No.

10

48 at 22. However, the complaint does not reflect this. Its causes of actions and claims for relief

11

do not differentiate among Plaintiffs (or Defendants, for that matter). And Plaintiffs' prayer for

12

relief asks the Court to "[o]rder Defendants to reconsider Plaintiffs' . . . visa applications" and to

13

"remove the unlawful denials of entry into the United States from Plaintiffs' records." Dkt. No. 22

14

at 43–44. Plaintiffs cannot amend their complaint via a response brief. *Frenzel v. AliphCom*, 76 F.

15

Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by

16

the briefs in opposition to a motion to dismiss.").

17

To the extent Sobhi is raising a challenge to his expedited removal order, his claim is

18

dismissed. Immigration officers must presume that "[e]very alien" is "an immigrant until he

19

establishes to the satisfaction of the consular officer, at the time of application for a visa, and the

20

immigration officers, at the time of application for admission, that he is entitled to nonimmigrant

21

status under [8 U.S.C. § 1101(a)(15)]." 8 U.S.C. § 1184(b). "Foreign citizens, including

22

23

24

---

[12] That Section provides that any "immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . and a valid unexpired passport, or other suitable travel document . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Canadians, who are deemed to be intending immigrants are subject to documentary requirements under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and are removable under the expedited removal statute, 8 U.S.C. § 1225." *Smith v. U.S. Customs & Border Prot.*, 741 F.3d 1016, 1021 (9th Cir. 2014).

Here, Sobhi told the CBP officer that he and his family "were going to Boston, MA because his wife accepted a job as a J1 at the Harvard University. . . . and they are moving there now." Dkt. No. 22-5 at 4. The CBP officer found that Sobhi did not establish that he was entitled to nonimmigrant status, and denied him entry under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of proper entry documentation. *Id.* at 5–7. He then received an expedited order of removal. *Id.* at 7. Sobhi later applied for a United States visa and was denied under Section 1182(a)(3)(b). Dkt. No. 22 at 26–27; Dkt. No. 22-4 at 2.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 stripped courts' jurisdiction to review expedited removal orders except in narrow circumstances including limited habeas corpus proceedings under section 1225(e)(2) and limited systemic challenges under section 1225(e)(3). *See* 8 U.S.C. §§ 1252(a)(5), 1252(a)(2)(A)(i), 1225(e)(1)–(3).[13] The statute provides, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review. . .
>
> > (i) . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) . . . ; [or]
> >
> > (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title.

8 U.S.C. § 1252(a)(2)(A). Importantly, the admissibility determination underlying the final order of removal is not reviewable. *See id.* § 1252(e)(5) ("There shall be no review of whether the alien

---

[13] Systemic challenges must be instituted in the U.S. District Court for the District of Columbia and brought within 60 days of the date the challenged section, regulation issued to implement such section, or written policy directive, guideline, or procedure, is first implemented. 8 U.S.C. § 1252(e)(3)(A), (B).

is actually inadmissible."). Sobhi does not assert any claims that fall within the statutory exceptions to the jurisdiction stripping provision. Thus, insofar as he seeks review of his expedited removal order, that claim is dismissed. To the extent he also advances claims as a Visa Applicant, those claims are dismissed for the reasons laid out above.[14] And to the extent he asserts a claim as a Canadian Applicant, his claim is dismissed as explained below.

### 3.  Failure to State a Claim

Defendants argue that all of the Canadian Applicants have failed to state a claim "because their factual allegations do not violate any law and because the supporting documents they submit contradict their allegations." Dkt. No. 46 at 31.[15] Plaintiffs respond that CBP made "pretextual denials" under § 1182(a)(7)(A)(i)(I), finding the Canadian Applicants inadmissible for lack of immigrant visas even though they were not intending to immigrate and were not questioned about "the issue of immigrant intent." Dkt. No. 48 at 23.[16] The Canadian Applicants argue that despite the inadmissibility grounds cited, they were actually deemed inadmissible on terrorism related grounds without "any inquiry into [their] intent or knowledge of the IRGC being a Tier III organization." *Id.*[17] Defendants state in their reply that "Plaintiffs' argument on blanket denials requires Plaintiffs, and the Court, to assume a more specific inadmissibility ground than the consular officers provided in the removal notices." Dkt. No. 56 at 12.

---

[14] It appears that Mr. Sobhi's wife, Dr. Maryam Shamloo, is challenging Mr. Sobhi's visa denial like the rest of the Relatives, but not asserting her own APA claim. Dkt. No. 22 at 7, 26–27, 40–42.

[15] Other than Mr. Sobhi, the Canadian Applicants were not issued expedited orders of removal or removed, Dkt. No. 22 at 27–33, so the removal issues discussed above are not applicable to them.

[16] Again, one Canadian Applicant, Michael Wise, was not provided a basis for the CBP's officer's inadmissibility finding. Dkt. No. 22-5 at 38.

[17] Wise attests that he was determined to be inadmissible after CBP officers "delved into specific details of [his] daily tasks during [his] time service in the IRGC" and he provided "comprehensive descriptions" of his role in the IRGC. Dkt. No. 40 at 3.

*(a) The Canadian Applicants' APA Claim*

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." *Cabaccang v. U.S. Citizenship & Immigr. Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010) (quoting 5 U.S.C. § 704). Again, the Canadian Applicants fail to identify a particular agency responsible for the policy alleged in their complaint, so there is no "agency" action to review. *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1320 (S.D. Cal. 2018) (plaintiffs did not establish a final agency action where their complaint "contain[ed] allegations about the tactics employed by various CBP officials" but did not "connect[] any of that conduct with an unwritten policy created by the Defendants" and did not "even allege that the Defendants were involved in the development of any policy in this case"). In the same vein, Canadian Applicants fail to identify which Defendant(s) can redress their alleged injury. *See Herdoiza v. Dep't of State*, No. CV 23-1020 (TSC), 2024 WL 1212952, at *4 (D.D.C. Mar. 21, 2024).

Furthermore, as Defendants point out, Plaintiffs' allegations that the true reason for their denial of entry was 8 U.S.C. § 1182(a)(3)(B)(i)(VI) "are based on unsupported assumptions." Dkt. No. 46 at 10. Again, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs provide no factual support for their allegation that the basis for CBP officers' denial of their entry into the United States was because they were "member[s] of a terrorist organization" under Section 1182(a)(3)(B)(i)(VI) at the time of the attempted entry. Plaintiffs allege that they all completed military service with the IRGC "well before" April 2019 when it was designated as a Tier I FTO, Dkt. No. 22 at 1, but Section 1182(a)(3)(B)(i)(VI) applies to an applicant who "is" (present tense) a member of a Tier III FTO. Plaintiffs do not explain why this is a plausible basis for the officers' denials, especially considering that Section 1182(a)(3)(B)(i)(VIII) applies to any applicant who "has received"

(present perfect tense, indicating an occurrence in the past) military type training from an FTO of any tier. *See Bahiraei*, 717 F. Supp. 3d at 742 (observing that consular officers "could have concluded in their discretion" that the IRGC "was a Tier III terrorist organization at the time of service" under Section 1182(a)(3)(B)(i)(VIII) where visa applicants served in the IRGC prior to its Tier I designation).[18]

Even if the Canadian Applicants had advanced a plausible claim and identified an agency action, their APA claim still fails. The APA does not apply where a statute precludes judicial review. 5 U.S.C. § 701(a)(1). Again, under the INA, a foreign national arriving at the United States' border is considered an "applicant for admission." 8 U.S.C. § 1225(a)(1). At the border, the CBP officer determines whether the individual is admissible; as relevant here, any immigrant[19] who is not in possession of a valid entry document such as a passport is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I). When an immigration officer concludes that a noncitizen is inadmissible under Section 1182(a)(7)(A)(i)(I), the officer "shall order the alien removed from the United States without further hearing or review," i.e., expedited removal, subject to exceptions not relevant here. *Id.* § 1225(b)(1)(A)(i). If a CBP officer finds that an applicant for admission is inadmissible, the officer may, in her discretion, permit the applicant to withdraw her application for admission and depart immediately. *Id.* § 1225(a)(4). Noncitizens who withdraw their applications for admission avoid entry of a final order of removal against them, which can carry serious consequences. For

---

[18] A tier III FTO "is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" (1) commission, or incitement to commit, "under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity"; (2) preparation or planning of a terrorist activity; (3) gathering information on potential targets for terrorist activity; (4) solicitation of funds or other things of value for a terrorist activity or a terrorist organization; (5) solicitation of any individual to engage in terrorist activity or for membership in a terrorist organization; or (6) commission of an act that affords material support (i) for terrorist activity, (ii) to an individual who has committed or plans to commit terrorist activity, or (iii) to a terrorist organization. 8 U.S.C. § 1182(a)(3)(B)(vi), -(iv)(I)–(VI).

[19] Again, immigration officers must presume that "[e]very alien" is "an immigrant until he establishes . . . that he is entitled to nonimmigrant status under [8 U.S.C. § 1101(a)(15)]," 8 U.S.C. § 1184(b), and "intending immigrants are subject to documentary requirements under 8 U.S.C. § 1182(a)(7)(A)(i)(I)," *Smith*, 741 F.3d at 1021.

1    instance, a final order of removal issued pursuant to 8 U.S.C. § 1182(a)(7) carries a five-year bar

2    on admission to the United States. *Id.* § 1182(a)(9)(A)(i).

3    Rather than challenging only the "blanket policy" that allegedly misapplies Section

4    1182(a)(3)(B)(i)(VI), Plaintiffs ask the Court to order Defendants to "remove the unlawful denials

5    of entry into the United States from Plaintiffs' records." Dkt. No. 22 at 44. This request for relief

6    indicates that the heart of their challenge is to the CBP officers' admissibility determinations. *See*

7    *Bahiraei*, 717 F. Supp. 3d at 737 ("Despite the variety of legal theories represented by these claims,

8    each is merely a different route to try to reach the same destination."). And importantly, Plaintiffs'

9    arguments presuppose that CBP officers in fact interpreted the statute to require their expedited

10   removal under Section 1225(b)(1)(A)(i) if they chose not to withdraw their applications for entry.

11   Dkt. No. 22 at 14–15; *Vidauri v. Garza*, No. 7:14-CV-768, 2015 WL 14079691, at *4 (S.D. Tex.

12   June 30, 2015). To the extent this constitutes an "individual determination . . . arising from or

13   relating to the implementation or operation of an order of removal," 8 U.S.C. § 1252 precludes

14   this Court's review of any such determination by CBP officers, including the underlying

15   admissibility assessment. *Ramos v. Mayorkas*, No. EP-21-CV-127-KC, 2022 WL 1931173, at *4

16   (W.D. Tex. Jan. 20, 2022) (finding that Section 1252 barred plaintiff's claim where plaintiff argued

17   that she had no intent to apply for admission and that Section 1182(a)(7)(A)(i)(I) was not the true

18   basis for her removal); *see also Odei v. United States Dep't of Homeland Sec.*, 937 F.3d 1092,

19   1094 (7th Cir. 2019); *Vivint, Inc. v. Mayorkas*, 614 F. Supp. 3d 993, 1002 (D. Utah 2022); *Vidauri*,

20   2015 WL 14079691, at *5.[20]

21

22

23   [20] Judicial review of all questions of law and fact that underlie a final order of removal must be brought in a petition
     to review a final order of removal in an appellate court. *See* 8 U.S.C. § 1252(b)(9); *see also Martinez v. Napolitano*,
24   704 F.3d 620, 622 (9th Cir. 2012) ("The exclusive means to challenge an order of removal is the petition for review
     process.").

1      To the extent the CBP officers' pre-withdrawal determinations of inadmissibility do *not*

2   constitute "individual determination[s] . . . arising from or relating to the implementation or

3   operation of an order of removal," there are two problems with the Canadian Applicants' claims.

4   First, as Defendants point out, withdrawal of an application for admission "is a form of

5   discretionary relief available in expedited removal proceedings." Dkt. No. 46 at 32–33 (quoting

6   *United States v. Garcia Gonzalez*, 791 F.3d 1175, 1177 (9th Cir. 2015)). Section 1252(a)(2)(B)

7   deprives courts of jurisdiction to review decisions committed by statute to the discretion of the

8   Attorney General under Subchapter II. "The decision to allow withdrawal of an application for

9   admission is precisely such a decision: 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying

10  for admission may, *in the discretion of the Attorney General* and at any time, be permitted to

11  withdraw the application for admission and depart immediately from the United States." *Juras v.*

12  *Garland*, 21 F.4th 53, 60 (2d Cir. 2021); *see also Ahmad v. Noem*, No. 2:24-CV-00083, 2025 WL

13  934614, at *9 (D. Utah Mar. 27, 2025) ("Because the ultimate decision regarding waiver is

14  discretionary, the court is deprived of jurisdiction to review any associated 'decision or action'—

15  even the 'first step' nondiscretionary factual determination challenged here."); *Vivint, Inc.*, 614 F.

16  Supp. 3d at 1003 ("[I]t defies logic that Congress wished to withhold judicial review of

17  inadmissibility determinations from individuals who receive expedited removal orders but permit

18  judicial review of claims by individuals considered inadmissible for the exact same reasons but

19  who withdrew their applications on the threshold of receiving an expedited removal order."). 

20  Second, the withdrawal renders the CBP officers' admissibility determinations "merely advisory

21  opinions that are not binding in future instances—in which case, the court cannot rule on the

22  propriety of an advisory opinion." *Vivint*, 614 F. Supp. 3d at 1005.

23      For all of these reasons, the Canadian Applicants' APA claim is dismissed.

24

*(b) The Canadian Applicants'* Accardi *"Claim"*

Under the *Accardi* doctrine, agencies are bound to follow their own rules and guidelines. *Accardi*, 347 U.S. at 268. Plaintiffs' amended complaint alleges one "claim for relief" under *Accardi* related to the Canadian Applicants: they allege that "when CBP officers use their discretion to allow an applicant to withdraw their application for admission, '[t]he alien's decision to withdraw his or her application for admission must be made voluntarily.'" Dkt. No. 22 at 36–37 (quoting 8 C.F.R. § 235.4). They contend that despite that requirement, their decisions to withdraw their applications for admission were not voluntary. *Id.*[21]

Again, the *Accardi* doctrine is not an independent cause of action. *Ajaj*, 2015 WL 14097638, at *2; *Am. C.L. Union Found.*, 2023 WL 4846714, at *3. Regardless, Plaintiffs did not respond to Defendants' argument that the Canadian Applicants have not been harmed by the opportunity to withdraw their applications for admission, Dkt. No. 46 at 33,[22] nor did they allege that they were harmed as a result of the voluntariness issue. This "claim" is therefore dismissed. Because the *Accardi* doctrine on its own is not a cognizable claim, and because Plaintiffs failed to meaningfully defend this "claim," it would be futile to allow them to amend this portion of their complaint. *Yeganeh*, 2021 WL 5113221, at *10.

## F.     Leave to Amend

"In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th

---

[21] The amended complaint also alleges that "Defendants have promulgated internal and public guidance regarding what officers are required to consider, and what procedures are to be followed, when making admissibility determinations on a case-by-case basis." Dkt. No. 22 at 36. That vague contention does not identify any such internal or public guidance, and is therefore insufficient to state a claim.

[22] Again, noncitizens who are permitted to withdraw their applications for admission avoid the consequences of receiving an expedited order of removal, which would trigger a ban on returning to the United States for five years. 8 U.S.C. § 1182(a)(9)(A)(i).

Cir. 2016). The Court declines without prejudice (except as stated above with respect to Dr. Eshghi's First Amendment claim and Plaintiffs' *Accardi* doctrine "claim") to grant leave to amend at this point because Plaintiffs have not sought leave to amend, and the parties' briefs do not address the issue or the relevant factors. Consequently, if Plaintiffs seek leave to amend, they should file a motion that complies with Local Civil Rule 15(a) within 30 days of the date of this Order. Any proposed second amended complaint must include numbered paragraphs as required by Federal Rule of Civil Procedure 10(b), and must otherwise conform to applicable law regarding the form of pleadings.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. Dkt. No. 46.

Dated this 27th day of May, 2025.

Lauren King
United States District Judge